## MATTER OF BUSCEMI

### In Deportation Proceedings

### A-30820784

*Decided by Board April 13, 1988*

(1) One or more of the adverse discretionary factors noted in *Matter of Marin*, 16 I&N Dec. 581 (BIA 1978), may ultimately be determinative of whether section 212(c) relief is granted in an individual case.

(2) The necessity of demonstrating unusual or outstanding equities as part of an application for section 212(c) relief is not exclusively triggered by serious crimes involving controlled substances, such as the trafficking or sale of drugs, but rather, the gravity of the offense, per se, must be examined.

(3) The need to show unusual or outstanding equities in a section 212(c) case may be mandated because of a single serious crime or because of a succession of criminal acts which together establish a pattern of serious criminal misconduct.

(4) An alien who demonstrates unusual or outstanding equities, as may be required in a section 212(c) matter, merely satisfies the threshold test for having a favorable exercise of discretion considered in his case; such a showing does not compel that discretion be exercised in his favor. *Matter of Marin, supra,* clarified.

(5) Rehabilitation is one of the favorable considerations in the discretionary evaluation with respect to section 212(c) relief; and, in fact, an applicant for relief with a criminal record will ordinarily be required to make a showing of rehabilitation before relief will be considered as a matter of discretion. *Matter of Marin, supra,* clarified.

(6) Notwithstanding the presence of an unusual or outstanding equity, the Board of Immigration Appeals denied section 212(c) relief in the exercise of discretion, because of the serious nature of the alien's criminal convictions and his failure to establish rehabilitation.

CHARGE:

Order: Act of 1952—Sec. 241(a)(11) [8 U.S.C. § 1251(a)(11)]—Convicted of controlled substance violation

ON BEHALF OF RESPONDENT:
Reverend Robert Vitaglione
Accredited Representative
856 Pacific Street
Brooklyn, New York 11238

ON BEHALF OF SERVICE:
William F. Jankun
General Attorney

Charles Sanders
Acting Appellate Counsel

BY:  Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision dated August 20, 1987, the immigration judge found the respondent deportable on the charge set forth above and denied his application for relief under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1982). The respondent has appealed. The appeal will be dismissed.

The respondent is a single, 26-year-old native of Italy and lawful permanent resident of the United States. On March 14, 1983, he was convicted in the Supreme Court of the State of New York of the crime of attempted criminal sale of a controlled substance, heroin. At the deportation hearing, the respondent admitted the allegations in the Order to Show Cause and Notice of Hearing (Form I-221) and conceded deportability under section 241(a)(11) of the Act, 8 U.S.C. § 1251(a)(11) (Supp. IV 1986), for having been convicted, at any time after entry, of a violation of, or a conspiracy to violate, any law or regulation of a state, the United States, or a foreign country relating to a controlled substance. We find that deportability has been established by clear, unequivocal, and convincing evidence. See 8 C.F.R. § 242.14(a) (1988); Woodby v. INS, 385 U.S. 276 (1966). The only issue on appeal is whether the immigration judge properly denied the respondent's application for a waiver under section 212(c) of the Act.

The record reflects that the respondent has resided in the United States since 1970, when he was admitted for lawful permanent residence. It further indicates that the respondent's immediate family, consisting of his parents and four siblings, all reside in this country either as United States citizens or lawful permanent residents. The respondent's mother, who testified in his behalf, stated that her son has helped to support the family and has acted as a father to his siblings since her husband abandoned them in 1975.

The respondent testified that he was forced to attend primary school on a part-time basis so that he could work to earn money for his family. He further advised that he dropped out of high school to attend a vocational school in automotive mechanics and then, in 1976, began work as a mechanic. He indicated that he would give his mother a large portion of his paycheck each week. The record also reveals that the respondent's mother and sister are currently employed on a full-time basis and that the family is self-sufficient despite the inability of the respondent to contribute toward its support due to his incarceration.

The respondent advised that he would feel very uncomfortable if deported to Italy and that he wishes to remain with his family in this country. He stated that he was last in Italy in 1980, when he visited for a 4-month period, and that he did not like it. He testified that, although he was able to find work in Italy as a mechanic,

he was unable to earn sufficient money to support his family, who had accompanied him, and, therefore, they all returned to the United States.[1] He stated that, while he probably would be able to find employment in Italy if deported, the job would not pay well. Moreover, he advised that, although he has uncles and aunts in Italy, they would be hostile toward him because of his criminal record. The testimony of the respondent, his mother, and his sister, who also testified in his behalf, revealed that they have a close relationship. According to this testimony, they converse on the telephone frequently, and the respondent's mother and sister visit him in prison every month. The respondent also indicated that his father has visited him once in prison.

With respect to his criminal history, the respondent testified that he began using drugs in 1980, and that he acquired a 60- to 70-dollar-a-day habit. He informed the immigration judge that, despite his 1983 attempted drug sale conviction, he never sold drugs and he accepted a sale conviction only because he was naive. The respondent testified that he was sentenced to 5 years' probation for his offense. He also stated that, subsequent to this conviction, he entered a drug rehabilitation program for 6 months and did not take drugs during this period. The respondent's testimony in this regard is supported by a copy of a letter, dated May 31, 1985, from the residential coordinator of a live-in drug rehabilitation facility, who indicates that the respondent stayed at the facility from February 23, 1984, until August 1, 1984, and that he successfully maintained a drug-free state during this time. The respondent further testified, however, that he began taking drugs again 4 months after he left the program and that he participated in a robbery in order to support his habit. The record reflects, in fact, that the respondent committed this crime on October 12, 1984, approximately 2½ months after completing the drug rehabilitation program. According to the respondent, he and four other men, who had two guns between them, entered a house for the purpose of stealing valuables and, in the process, tied up a maid but did not harm her. The record shows that, as a result of this incident, the respondent was convicted of attempted robbery on May 3, 1985, and was sentenced to an indeterminate prison term of 3 and ½ to 7 years. Moreover, the respondent advised that, after his robbery arrest, the probation with respect to his 1983 conviction was revoked, and he was sen-

---

[1] According to the respondent, this was his family's second attempt to reestablish themselves in Italy. He stated that his family went to Italy in 1974 for a 1-year period, but that they were unsuccessful and were forced to return to the United States.

tenced to 6 months in prison. The respondent's inmate record card, a copy of which is contained in the record, indicates that while incarcerated the respondent committed several infractions, such as damaging state property, possessing contraband, disobedience, and being out of place, for which he received sanctions of varying severity, from reprimands to loss of privileges. The respondent testified that these violations and punishments were not serious.

The respondent advised that his past transgressions were the result of his drug abuse and his association with individuals who had a bad influence on him. He stated that he began taking drugs to deal with the pressure that he felt from having to assume adult responsibilities after his father left. According to the respondent, he will not be involved in any future wrongdoing because he realizes that it is the incorrect path to pursue and that he eventually would find himself in prison again. He testified that the last time he took drugs was in November 1984 and that he believes that he is rehabilitated. He related that, while in prison, he has participated in drug rehabilitation, violence awareness, vocational, and educational programs. The respondent also indicated that he has been employed in prison, first as a mechanic and then as a barber. He further stated that his former employer has offered to rehire him as a mechanic when he is released.

Finally, the respondent submitted copies of letters and affidavits from his former neighbors and employer testifying to his good character. He also provided a copy of a letter, apparently from the pastor of his church, which states that the respondent's rehabilitation would not be aided if he is returned to Italy and that the respondent should be permitted to remain in this country with his family.

The immigration judge denied the respondent's application for a section 212(c) waiver in her discretion, concluding that the respondent had not demonstrated the outstanding equities and genuine rehabilitation necessary to merit relief in the face of a serious criminal record. The immigration judge noted that the respondent's expressed feeling of discomfort in returning to Italy if deported, combined with the emotional hardship to his family members, did not rise to the level of outstanding equities. In finding that the respondent had failed to demonstrate rehabilitation, the immigration judge observed that, although the respondent had participated in various programs while incarcerated, he also had committed several infractions.

The respondent's contentions on appeal were presented through his Notice of Appeal to the Board of Immigration Appeals (Form I-290A), his appeal brief, and oral argument. He argues that the im-

migration judge abused her discretion in refusing to grant section 212(c) relief. He maintains that he will be forced into a state of homelessness and destitution if required to return to Italy, conditions which he asserts amount to unusual and outstanding hardship. He points out that, as he was unsuccessful in his attempt to reestablish himself in Italy in 1980 when he had the presence of his family for support, he is unlikely to succeed by himself if deported. Furthermore, the respondent alleges that his family will suffer emotional and economic privation if he is deported.

In addition, the respondent contends that the immigration judge erroneously found that rehabilitation had not been established. In support of this contention, the respondent alleges that he was not involved in any wrongdoing for a 2-year period (apparently the time between his 1983 and 1985 convictions). He also states that he made great efforts to rehabilitate himself by participating in various prison programs. Finally, he emphasizes that he has worked while incarcerated and that his prison record contains only relatively minor infractions. With respect to his ability to reintegrate himself into society, the respondent stresses his post-release offer of employment, his violence awareness counseling, and the fact that he will be under intense parole supervision for a number of years. As a final argument, the respondent suggests that, because the deportation hearing was conducted in a state prison environment, the immigration judge may have been more conservative in exercising her discretion than she would have been in a more neutral setting.

The Immigration and Naturalization Service presented its contentions on appeal at oral argument. It argues that the decision of the immigration judge is correct and that the respondent has not demonstrated the unusual or outstanding equities necessary to overcome his two serious convictions and history of drug addiction. Furthermore, the Service asserts that, far from showing rehabilitation, the respondent appears to be a likely recidivist.

Section 212(c) of the Act provides that aliens lawfully admitted for permanent residence who temporarily proceed abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of 7 consecutive years, may be admitted in the discretion of the Attorney General without regard to certain specified grounds of exclusion. In light of our decision in *Matter of Silva*, 16 I&N Dec. 26 (BIA 1976), a lawful permanent resident is prima facie eligible for relief from deportation under section 212(c), even though he has not proceeded abroad subsequent to the acts which rendered him deportable. *See Francis v. INS*, 532 F.2d 268 (2d Cir. 1976).

Section 212(c) of the Act, however, does not provide an indiscriminate waiver for all who demonstrate statutory eligibility for such relief. Instead, the Attorney General or his delegate is required to determine as a matter of discretion whether an applicant merits the relief sought, and the alien bears the burden of demonstrating that his application merits favorable consideration. *Matter of Marin*, 16 I&N Dec. 581 (BIA 1978).

The exercise of discretion in a particular case necessarily requires consideration of all the facts and circumstances involved. There must be a balancing of the social and humane considerations presented in an alien's favor against the adverse factors evidencing his undesirability as a permanent resident. The Board has enunciated numerous factors to be considered in determining whether or not to grant section 212(c) relief. *See Matter of Marin, supra*. Favorable considerations have been found to include such factors as family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred at a young age), evidence of hardship to the respondent and his family if deportation occurs, service in this country's armed forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character. *Id*. Among the factors deemed adverse to an alien are the nature and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country. *Id*. Moreover, as we noted in *Marin*, one or more of these adverse considerations may ultimately be determinative of whether section 212(c) relief is in fact granted in an individual case. *Id*.

We have also pointed out that, as the negative factors grow more serious, it becomes incumbent upon the alien to introduce additional offsetting favorable evidence, which in some cases may have to involve unusual or outstanding equities. *Id*. Such a heightened showing is required when an alien has been convicted of a serious drug offense, particularly one relating to the trafficking or sale of drugs. *Id*. The necessity of demonstrating unusual or outstanding equities is not exclusively triggered by serious crimes involving controlled substances, however. Rather, as we indicated in *Marin*, one must examine the gravity of the offense, per se. *Id*. In addition, such a showing may be mandated because of a single serious crime, as in *Marin*, or because of a succession of criminal acts, which to-

gether establish a pattern of serious criminal misconduct. Finally, we observe that an alien who demonstrates unusual or outstanding equities, as required, merely satisfies the threshold test for having a favorable exercise of discretion considered in his case; such a showing does not compel that discretion be exercised in his favor.

In regard to the adverse factors in this case, we note that the respondent, an admitted drug user, has been convicted of two serious offenses, one involving the attempted sale of heroin, and the other entailing attempted robbery, in which firearms were carried and an innocent bystander physically restrained. We further observe that the second crime was committed while the respondent was still under probation for his first offense. Given the serious nature of these crimes and their relative recency, it is necessary for the respondent to demonstrate unusual or outstanding equities in order for a favorable exercise of discretion to be considered.

After careful review, we conclude that, although the respondent's case warrants our consideration as to whether favorable discretion should be exercised, we find that, after the equities are balanced, a discretionary grant of section 212(c) relief is not merited. In his favor, the respondent has shown that he has resided in this country for some 17 years [2] and that such residence began at a young age. Moreover, the record reflects that the respondent's entire immediate family resides in this country either as United States citizens or lawful permanent residents. Furthermore, the respondent has demonstrated that he is closely tied to his family and that all would suffer emotional hardship if the respondent were deported. Finally, we note that the respondent appears to have a history of gainful employment and that he was forced to grow up under difficult circumstances. We consider these to be outstanding equities, particularly with respect to the respondent's 17 years of residence in this country since age 9.

Contrary to the respondent's assertions, however, we are not persuaded that he will become homeless and destitute if deported to Italy. The record indicates that he found employment in Italy as a mechanic in 1980, and he testified that he probably would be able to find work there again, though it would not pay well. In addition, the respondent offers no evidence to support his conjecture that he will be rejected by his Italian relatives because of his criminal

---

[2] The respondent indicated that he and his family made two efforts, in 1974 and 1980, to reestablish themselves in Italy and that, in this regard, he remained abroad for periods of 12 and 4 months, respectively. In view of our disposition of this matter, we find it unnecessary to consider whether the respondent's attempts to reestablish himself abroad constitute an abandonment of his lawful permanent resident status, thus rendering him statutorily ineligible for section 212(c) relief.

record, or that, even if this were to be the case, he would be unable to house himself without their assistance. Although the respondent maintains that previous family attempts to resettle in Italy ended in failure and that, therefore, he will be unable to succeed there by himself, we note that the specific reasons offered for the most recent failure were that he could not earn enough money to support his family and that he did not like Italy. We observe that, if the respondent is deported, he will only have to support himself. Moreover, we are not convinced that the respondent will be inherently unable to fashion a life for himself in Italy simply because he finds that country disagreeable. With respect to the alleged financial hardship to the respondent's family, we note that his mother and sister are presently employed on a full-time basis and that his family have managed to support themselves while the respondent has been in prison.

We also are not satisfied that the respondent has demonstrated rehabilitation, which can be another favorable consideration in the discretionary evaluation. In fact, an applicant for relief under section 212(c) of the Act with a criminal record will ordinarily be required to make a showing of rehabilitation before relief will be considered as a matter of discretion. *Matter of Marin, supra.* In evaluating the respondent's record in this regard, we note that he was convicted of a serious drug offense in March 1983, for which he was sentenced to 5 years' probation, and that he completed a drug rehabilitation program subsequent to this conviction. Yet in October 1984, while still on probation, the respondent perpetrated his second serious offense, attempted robbery, for which he received a prison sentence and had his probation revoked. Moreover, we observe that the respondent gave contradictory testimony as to the length of time he was able to remain free of drugs. Although he testified that he did not begin taking drugs again until 4 months after the end of the substance abuse program, *i.e.*, November 1984, he also stated at the hearing that he joined in the October 12, 1984, robbery scheme in order to support his ongoing drug habit. Demonstrably, the fact of his probation and participation in a substance abuse program had no rehabilitative effect. Given this history, we cannot conclude that his expressed reformation and participation in prison programs and prison employment adequately establish genuine rehabilitation.

Even considering the outstanding equities which the respondent has been able to establish, we do not find that granting relief is warranted or in the best interests of this country. In reaching this conclusion, we have evaluated the respondent's equities against the serious adverse factors present in his case and our determination

that he has not demonstrated rehabilitation. While his deportation may well involve hardship to himself and certainly much unhappiness for his family, the responsibility for this result rests with the respondent alone.

As a final matter, we conclude that the respondent has failed to establish that he was prejudiced because his hearing was conducted in a prison environment. He has offered no specific examples as to how the immigration judge may have been biased by the setting. After a review of the record, we are satisfied that the conduct of the hearing and the immigration judge's decision were fair and impartial.

Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.